RICO PERRY,                              )
                                         )
            Plaintiff,                   )
      v.                                 )        CIVIL ACTION
                                         )        NO. 10-10769-JGD
SHERIFF HODGSON, et al.,                 )
                                         )
            Defendants.                  )

## MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANTS' MOTIONS TO DISMISS

March 25, 2011

DEIN, U.S.M.J.

# I.  INTRODUCTION

Plaintiff Rico Perry ("Perry") has brought this action pro se alleging that he was

assaulted by corrections officers at the Bristol County House of Correction ("BCHC"),

and was subsequently deprived of adequate medical care for the injuries he sustained as a

result of the assault.  He has named as defendants various officials and employees of the

BCHC, including the Sheriff of Bristol County, Thomas M. Hodgson; the Superintendent

of the BCHC, George A. Vose, Jr.; the Assistant Deputy Superintendent of the BCHC,

Major James Lancaster; and Lieutenant Kevin Rose (collectively, the "Bristol County

Defendants"), as well as various officials and employees of the Norfolk County Jail,

including the Sheriff of Norfolk County, Michael G. Bellotti; the Superintendent of

Operations at the jail, Peter E. Perroncello; and Registered Nurses Tara Brown and

Denise Burke (collectively, the "Norfolk County Defendants").[1]  By his complaint, Perry

has asserted claims against the defendants, pursuant to 42 U.S.C. § 1983 ("Section

1983"), for violations of his rights under the Eighth and Fourteenth Amendments to the

Constitution.  He is seeking to hold the defendants liable in both their individual and

official capacities.

The matter is presently before the court on the Norfolk County Defendants'

motion to dismiss (Docket No. 16) and on the Bristol County Defendants' motion to

dismiss (Docket No. 34).  By their motions, the defendants are seeking dismissal of all of

the claims against them for failure to state a claim for relief pursuant to Fed. R. Civ. P.

12(b)(6).  As described below, this court finds that dismissal is warranted with respect to

Perry's claims against the moving parties, except for his excessive force claim against

Lieutenant Rose in his individual capacity.  Accordingly, and for all the reasons stated

herein, the Norfolk County Defendants' motion (Docket No. 16) is ALLOWED and the

Bristol County Defendants' motion (Docket No. 34) is ALLOWED IN PART and

DENIED IN PART.  Consequently, all of Perry's claims against the Norfolk County

Defendants and the Bristol County Defendants shall be dismissed except for the claim

against Bristol County Defendant Rose in his individual capacity.

---

[1]  Perry has also brought claims against five unnamed guards and two unnamed nurses at
the BCHC.  However, the claims against those individuals are not addressed in the pending
motions and will not be discussed further.

## II.  STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Where, as here, the plaintiff is proceeding pro se, the court must construe his allegations liberally.  See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976) (a pro se complaint, however inartfully pleaded, must be liberally construed).  In doing so, the court "may consider, in addition to the complaint itself, a limited array of additional documents such as any that are attached to the complaint and 'documents sufficiently referred to in the complaint.'"[2]  Giragosian v. Bettencourt, 614 F.3d 25, 27-28 (1st Cir. 2010) (quoting Miss. Pub. Emp. Ret. Sys. v. Boston Scientific Corp., 523 F.3d 75, 86 (1st Cir. 2008)).  Applying these standards to the instant case, the relevant facts are as follows.

### The Alleged Assault

The alleged assault giving rise to this case took place on June 9, 2007.  (See Pl. Ex. at pp. 1-2).  On that date, Perry was transferred from the Dedham House of Correction to the BCHC.  (Compl. (Docket No. 1) ¶ 12).  He claims that he was in a holding cell in the booking area of the BCHC when he was approached by an unidentified lieutenant.  (Id.).  Allegedly, Perry complained to the lieutenant that another prisoner had

---

[2]  The plaintiff has attached various medical records to his complaint (Docket No. 1-1), which shall be cited herein as "Pl. Ex."

collapsed on the floor and was suffering from a serious medical condition, but the lieutenant told Perry to mind his own business.  (Id. ¶¶ 12-13).  Perry claims that this comment triggered an argument during which the plaintiff told the lieutenant to "[j]ust do [his] job," and the lieutenant replied that Perry was "gonna have a nice stay here."  (Id. ¶ 14).

Subsequently, defendant Kevin Rose ("Rose") and an unknown officer allegedly took Perry to the booking room, where they were met by the lieutenant with whom the plaintiff had argued.  (Id. ¶ 15).  The plaintiff claims that the lieutenant grabbed his hand roughly in order to take fingerprints, and commented that Perry "like[d] to shoot at cops." (Id.).  Perry further claims that he pulled his hand away and told the lieutenant that he did not have to grab him that way and to have Rose do the booking.  (Id.).  Following this exchange, Rose and the lieutenant allegedly refused to complete the booking process and began to escort Perry back to his cell.  (Id. ¶ 16).  Perry claims that while he was being taken back to his cell, the unnamed lieutenant put "serious pressure" on his arm.  (Id.).  This allegedly prompted the plaintiff to pull his arm away and to say, "you are hurting my arm."  (Id.).

The plaintiff contends that the lieutenant and Rose reacted to his comment by jumping on him.  (Id.).  Allegedly, the officers were joined by two other guards and the SRT team.  (Id.).  According to Perry, he was kicked and punched repeatedly by Rose and the other officers even though he was wearing full restraints.  (Id. ¶¶ 16-17).  Perry claims that he suffered a broken jaw, injuries to his head and mouth, and bruises all over his

body as a result of the assault. (Id. ¶ 17). He also claims that the assault was caused by the failure of defendants Thomas Hodgson ("Hodgson"), George Vose ("Vose"), James Lancaster ("Lancaster"), Michael Bellotti ("Bellotti") and Peter Perroncello ("Perroncello") to adequately train, supervise and protect him from the actions of Rose and the other officers who attacked him. (Id. ¶ 22).

## Medical Treatment Following the Alleged Assault

Following the alleged assault, Perry was screened by a nurse in the health services department at the BCHC. (See id. ¶ 18; Pl. Ex. at pp. 3-5). As noted in the plaintiff's medical records, the nurse observed soft tissue swelling on the right side of Perry's face and in his buccal cavity, as well as bruises and an abrasion on his wrist. (Pl. Ex. at p. 4). She also determined that the plaintiff was in obvious pain and that he was wheezing, although it was unclear whether the wheezing was caused by the plaintiff's confrontation with the corrections officers or as a result of asthma. (Id.).

Perry claims that despite his injuries and his complaints of a broken jaw, the medical staff at the BCHC refused to provide him with adequate medical care. (Id. ¶ 20). Specifically, he alleges that when he was first brought to the medical staff, one of the nurses said, "[t]hat's what you get." (Id. ¶ 18). When Perry told her that his jaw was broken, she allegedly replied that he only had a broken tooth, and that the dentist would not be available for another four days. (Id.). Perry also claims that he was not taken to an outside hospital until 24 hours after the incident occurred. (Id. at ¶ 19).

The plaintiff's allegations of inadequate medical care at the BCHC are inconsistent with the medical records attached to the complaint, which show that he was taken to the emergency room at St. Luke's hospital on June 9, 2007, the date of the alleged incident, and diagnosed with a fractured jaw. (Pl. Ex. at pp. 7, 17, 19). However, the inconsistency is not material to the present motions, which concern medical staff at the Norfolk County Jail, but not at the BCHC.

On June 10, 2007, the plaintiff was transported to Massachusetts General Hospital ("MGH") where he underwent surgery on his jaw and was given pain medications. (Pl. Ex. at pp. 17-18). As reflected in Perry's medical records from MGH, the plaintiff told medical personnel at the hospital that he had been assaulted by prison guards, who had punched him on both sides of his lower face. (Pl. Ex. at pp. 17, 19).

Perry was discharged from MGH on June 11, 2007 with instructions for his care, and was placed in the Health Services Unit at the Norfolk County Jail. (See Pl. Ex. at pp. 15, 26-28). Medical records from that facility indicate that the plaintiff was provided with medications and given a liquid diet. (Pl. Ex. at p. 16). Nevertheless, Perry claims that defendant nurses Tara Brown ("Brown") and Denise Burke ("Burke") failed to provide him with proper care after his return to the Norfolk County Jail. (Compl. ¶ 25).

Additional factual details are described below to the extent they are relevant to this court's analysis.

### III.  ANALYSIS

#### A.    Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the non-moving party. Cooperman, 171 F.3d at 46. Dismissal is only appropriate if the pleadings, so viewed, fail to support "'a plausible entitlement to relief.'" Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. (quoting Ashcroft, 129 S. Ct. at 1950). "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.' '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is

entitled to relief.'" Id. (quoting Ashcroft, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

**B.      Exhaustion**

Both the Norfolk County Defendants and the Bristol County Defendants have moved to dismiss Perry's claims for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"). This court finds that the issue of exhaustion raises questions of fact that cannot be resolved at this stage in the litigation. Therefore, dismissal is not appropriate on this basis.

The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, the statute "requires prisoners to exhaust prison grievance procedures before filing suit." Jones v. Bock, 549 U.S. 199, 202, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007). Moreover, the PLRA requires "proper exhaustion" such that "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance process itself." Id. at 218, 127 S. Ct. at 922 (quoting Woodford v. Ngo, 548 U.S. 81, 88, 126 S. Ct. 2378, 2384, 165 L. Ed. 2d 368 (2006)) (internal citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system

can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91, 126 S. Ct. at 2386 (footnote omitted).

The defendants contend that Perry's claims should be dismissed because he has failed to allege facts in his complaint which demonstrate exhaustion of his administrative remedies. Notwithstanding the exhaustion requirement, a claim of "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216, 127 S. Ct. at 921. This does not foreclose a defendant from raising the issue "in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense are clear on the face of the plaintiff's pleadings." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quotations, punctuation and citations omitted). However, where, as here, the plaintiff has not raised the issue in his complaint, and there is nothing alleged therein that would support a conclusion, one way or the other, as to whether the plaintiff has exhausted or even attempted to exhaust his administrative remedies, the question of exhaustion ordinarily must await further development of the factual record.

Nevertheless, both parties have submitted evidence pertaining to the question of exhaustion. In particular, the defendants have submitted evidence indicating that Perry failed to file an inmate grievance form addressing any of the events giving rise to this lawsuit, or otherwise comply with the procedural requirements of the grievance procedures available at the BCHC and the Norfolk County Jail. (See Perroncello

Affidavit ¶¶ 9-19 and Exhibits attached thereto; Affidavit of Lorraine J. Rousseau, Esq. ¶¶ 6-15 and Exhibits attached thereto).[3]  In response, Perry has submitted evidence indicating that both he and his attorney were denied requests for grievance forms, and that therefore, the plaintiff attempted to submit grievances regarding the alleged assault and failure to provide proper medical care by sending handwritten letters to Hodgson at the Bristol County Sheriff's Office and to the grievance coordinator at the Norfolk County Jail.  (See Affidavit of Rico Perry ¶¶ 4-6 and Exhibits attached thereto; Affidavit of Gordon W. Spencer, Esq. ¶¶ 1-4).[4]

The evidence submitted by the parties establishes that there are disputed questions of fact pertaining to the issue of exhaustion.  "The PLRA requires exhaustion of 'such administrative remedies as are available[.]'"  Jones, 549 U.S. at 217, 127 S. Ct. at 922 (quoting 42 U.S.C. § 1997e(a)).  See also Woodford, 548 U.S. at 85, 126 S. Ct. at 2382 ("Prisoners must now exhaust all 'available' remedies").  If, as the plaintiff's evidence indicates, Perry was not provided with grievance forms despite his and his counsel's requests, the administrative remedies relied on by the defendants to support their affirmative defense of failure to exhaust would not have been "available."  See Mitchell v. Horn, 318 F.3d 523, 529, 536 (3d Cir. 2003) (concluding that if prison officials had

_____

[3] Perroncello's Affidavit is attached to the Norfolk County Defendants' motion to dismiss (Docket No. 16), and Attorney Rousseau's Affidavit is attached to the Bristol County Defendants' motion to dismiss (Docket No. 34).

[4] Perry's Affidavit is attached to his memorandum in opposition to the defendants' motions to dismiss (Docket No. 40).  Attorney Spencer's Affidavit is attached to Perry's reply to the Bristol County Defendants' motion to dismiss (Docket No. 51).

denied plaintiff necessary grievance forms, it would have rendered his administrative remedies unavailable and plaintiff would have satisfied PLRA exhaustion requirement); Bradley v. Washington, 441 F. Supp. 2d 97, 101 (D.D.C. 2006) ("plaintiff is correct in noting that a prison's administrative remedies can be rendered 'unavailable' for purposes of exhaustion when officials refuse to provide an inmate with required grievance forms"), and cases cited. Accordingly, even if, as the defendants argue, Perry failed to comply with the requirements of the administrative review process at the BCHC and the Norfolk County Jail, the plaintiff has raised a question of fact as to whether he nevertheless satisfied the PLRA's exhaustion requirement. Therefore, his claims will not be dismissed at this stage in the litigation based on failure to exhaust administrative remedies. However, nothing herein shall preclude the remaining defendant from raising the issue again by way of a motion for summary judgment if appropriate.

## C. **Individual Capacity Claims**

The defendants argue that, with the exception of his excessive force claim against Rose, Perry has not alleged sufficient facts to demonstrate a plausible entitlement to relief against any of the defendants in their individual capacities. This court agrees, and accordingly, those claims shall be dismissed.

### i. **Supervisory Defendants**

By his complaint, Perry is seeking to hold Bristol County Defendants Hodgson, Vose and Lancaster and Norfolk County Defendants Bellotti and Perroncello individually liable, pursuant to Section 1983, for failing to train and supervise their subordinates, and

for failing to protect the plaintiff from harm, in connection with the alleged assault that

occurred on June 9, 2007. (Compl. ¶ 22). "A claim under section 1983 has two essential

elements. First, the challenged conduct must be attributable to a person acting under

color of state law" and "second, the conduct must have worked a denial of rights secured

by the Constitution or by federal law." <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir.

1997), <u>cert.</u> <u>denied</u>, 522 U.S. 819, 118 S. Ct. 71, 139 L. Ed. 2d 32 (1997). In the instant

case, Perry has alleged that Hodgson, Vose, Lancaster, Bellotti and Perroncello were

officials of the BCHC or the Norfolk County Jail, and were therefore acting under color

of state law during the relevant time period.[5] (<u>See</u> Compl. ¶¶ 2-6, 22). At issue is

whether Perry has alleged sufficient facts to show that these defendants violated his

constitutional rights. For the reasons that follow, this court finds that the plaintiff has not

done so.

### Supervisory Liability

Perry does not claim that Hodgson, Vose, Lancaster, Bellotti or Perroncello

participated in the alleged assault or that they otherwise used excessive force. Rather, he

is seeking to hold these defendants liable in their capacities as supervisors at the BCHC

and the Norfolk County Jail. "[S]upervisory liability cannot be predicated on a

---

[5] The defendants have submitted evidence indicating that Perroncello was not employed by the Norfolk County Sheriff's Office, and that Vose was not yet employed by the Bristol County Sheriff's Office, at the time of the incidents alleged in Perry's complaint. (<u>See</u> Perroncello Affidavit ¶ 6; Affidavit of Lorraine J. Rousseau, Esq. ¶¶ 4-5). However, for purposes of the motions to dismiss, this court must accept Perry's allegations as true. <u>See</u> <u>Cooperman</u>, 171 F.3d at 46.

respondeat superior theory.  Supervisors may only be held liable under § 1983 on the basis of their own acts or omissions."  <u>Whitfield v. Melendez-Rivera</u>, 431 F.3d 1, 14 (1st Cir. 2005) (internal citation omitted).  Accordingly, as the First Circuit has explained,

> [i]n the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

<u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009) (quoting <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 44 (1st Cir. 1999)).  "In either case, the plaintiff in a Section 1983 action must show 'an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization,' between the actor and the underlying violation."  <u>Id.</u> (quoting <u>Camilo-Robles</u>, 175 F.3d at 44).

In the instant case, Perry's complaint is entirely void of any factual allegations linking the supervisory defendants to the alleged use of excessive force.  As an initial matter, Perry does not allege any facts indicating that one or more of the supervisory defendants took part in the alleged assault or was even present in the booking room of the BCHC on June 9, 2007.  Nor has he alleged that any of those defendants were aware of the alleged incident, much less had an opportunity to intervene but neglected to do so.  Additionally, the complaint contains no facts showing that the supervisory defendants had any responsibility for training or supervising Rose and the other officers who participated

in the challenged conduct.[6]  Moreover, there is nothing to suggest that the particular

individuals responsible for the alleged harm were in fact deprived of adequate training or

supervision, or that any such deprivation was the cause of the plaintiff's injury.  Thus,

Perry has failed to show that any of the supervisory defendants did anything, or failed to

do anything, that resulted in the deprivation of his constitutional rights.

The plaintiff's only allegation against Hodgson, Vose, Lancaster, Bellotti and

Perroncello is that they "failed to train, supervise and protect the plaintiff from the actions

of the defendants that caused him to be seriously assaulted in violation of the 8th and

14th Amendments to the United States Constitution, and 42 U.S.C. § 1983."  (Compl. ¶

22).  Such a conclusory allegation "'[is] not entitled to the assumption of truth.'"

Sanchez, 590 F.3d at 49 (quoting Ashcroft, 129 S. Ct. at 1950).  Rather, it "is precisely

the type of 'the-defendant-unlawfully-harmed-me' allegation[s] that the Supreme Court

has determined should not be given credence when standing alone."  Id. (quoting

Ashcroft, 129 S. Ct. at 1949).  Therefore, Perry's individual capacity claims against

Hodgson, Vose, Lancaster, Bellotti and Perroncello will be dismissed.

### Plaintiff's Proposed Allegations

In his opposition to the motions to dismiss, Perry proposes to remedy any

deficiencies in his claim against Hodgson by amending his complaint to allege that "[t]he

---

[6]  With respect to the Norfolk County Defendants, Bellotti and Perroncello, Perry has not
alleged any facts showing that they had any relationship whatsoever to the BCHC or to any
employees at that facility.

Defendant, Sheriff Hodgson, maintained a policy or custom of failing to reasonably train and supervise its Deputies, which resulted in a deliberate indifference to the rights of persons with whom the Deputies come into contact with, including the Plaintiff." (Pl. Opp. Mem. (Docket No. 40)). Even if Perry's proposal is construed as a motion for leave to amend his complaint, this court would deny the motion on the basis of futility.

"Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass. 2005) (quotations and citation omitted), and cases cited. The "futility" assessment is governed by the standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). See id. Consequently, an amendment will not be deemed futile unless the well-pleaded facts, taken as true and viewed in favor of the plaintiff, fail to support a "'plausible entitlement to relief.'" See Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp., 550 U.S. at 559, 127 S. Ct. at 1967). In the instant matter, Perry's proposed allegations against Hodgson constitute nothing more than "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp., 550 U.S. at 555, 127 S. Ct. at 1964-65. Thus, they are insufficient to support a plausible entitlement to relief.

One way in which a supervisor's behavior may give rise to liability under Section 1983 "is by formulating a policy, or engaging in a custom, that leads to the challenged occurrence." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). To succeed on such a claim, the plaintiff must allege that "(1) the supervisor demon-

strated deliberate indifference to plaintiff's constitutional rights by maintaining a policy or custom which violated those rights, and (2) the supervisor's conduct was causally connected to the constitutional violation caused by his subordinates." Gallagher v. Commonwealth of Mass., No. Civ. A. 00-11859-RWZ, 2002 WL 924243, at *2 (D. Mass. 2002) (citing Maldonado-Denis, 23 F.3d at 581-82). Perry's proposed amendment does not make the requisite showing.

Perry alleges generally that Hodgson maintained a custom or policy of failing to train and supervise his subordinates, but he has not identified the particular policy or custom at issue, and has not alleged any facts linking that custom or policy to the assault giving rise to this litigation. "A generalized showing of a deficient training program is not sufficient. The plaintiff must establish that the particular officers who committed the violation had been deprived of adequate training, and that this specific failure in training was at least a partial cause of the ultimate injury." Whitfield, 431 F.3d at 10. Perry's proposed amendment contains no facts that would satisfy this requirement. Nor does Perry propose to allege any facts to indicate that his harm was caused by a widespread failure to train or supervise rather than by an isolated instance of misconduct. "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Maldonado-Denis, 23 F.3d at 582. Finally, nothing in the proposed amendment or in the rest of the complaint describes any instances of prior wrongdoing or other facts that would have alerted Hodgson to the possibility that his conduct was likely to lead to the violation of an

inmate's constitutional rights.  See id. ("A causal link may . . . be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing viola-tions.").  Therefore, Perry has not shown that his proposed amendment would state a claim for relief against defendant Hodgson.

### ii.  Medical Defendants

The Norfolk County Defendants also contend that Perry has failed to plead sufficient facts to demonstrate a plausible entitlement to relief against nurses Brown and Burke in their individual capacities.  The only allegation of wrongdoing against these defendants is that they "did not properly care for the plaintiff after he was returned to Norfolk County Jail, in violation of the 8th Amendment to the United States Constitution, and 42 U.S.C. § 1983."  (Compl. ¶ 25).  For the reasons that follow, this is inadequate to state an Eighth Amendment claim against the medical defendants under Section 1983.

### Deliberate Indifference

In order to establish that prison officials violated the Eighth Amendment by withholding necessary health care, the plaintiff "must prove that the defendants' actions amounted to 'deliberate indifference to a serious medical need.'"  DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).  Deliberate indifference "has both an objective component (was there a sufficiently serious deprivation?) and a subjective component (was the deprivation brought about in wanton disregard of the inmate's rights?)."  Id. "[T]o satisfy the objective portion of the standard, an inmate must show that he has a

serious medical need and that this need has not been adequately treated." <u>Kosilek v.</u>

<u>Maloney</u>, 221 F. Supp. 2d 156, 180 (D. Mass. 2002). In order to satisfy the subjective

prong, the complainant must prove that the defendants "had a culpable state of mind and

intended wantonly to inflict pain." <u>DesRosiers</u>, 949 F.2d at 19. "The requisite state of

mind may be manifested by the officials' response to an inmate's known needs or by

denial, delay, or interference with prescribed health care." <u>Id.</u> "While this mental state

can aptly be described as 'recklessness,' it is recklessness not in the tort-law sense but in

the appreciably stricter criminal-law sense, requiring actual knowledge of impending

harm, easily preventable." <u>Id.</u>

Perry's complaint is void of any factual allegations that would support a claim for

deliberate indifference against Brown and Burke. For example, but without limitation,

the complaint contains no facts identifying the plaintiff's serious medical needs that

existed following his return to the Norfolk County Jail after surgery. Nor has the plaintiff

alleged what treatment was withheld from him or administered improperly. Additionally,

he has provided no facts indicating that either of the defendants was aware of any serious

medical needs that were going unmet, or acted with an intent to inflict pain. Instead, the

medical records attached to the complaint show that the when the plaintiff returned from

MGH to the Norfolk County Jail, he did receive medical care for injuries that he had

sustained as a result of the alleged assault. Nothing therein supports an inference that the

care was inadequate or that medical staff knew of such inadequacies but refused to

address them.  Accordingly, the plaintiff has failed to state a claim for relief against Brown and Burke in their individual capacities.

**Plaintiff's Proposed Allegations**

Perry contends that any deficiencies with respect to his claims against Brown and Burke could be cured by amending his complaint to allege that those defendants were "deliberately indifferent to his serious medical need."  (Pl. Opp. Mem. at 8).  This court disagrees.  The proposed amendment contains no facts and consists of nothing more than a legal conclusion, and the amendment would be futile.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief.  Ashcroft, 129 S. Ct. at 1949.  Therefore, even considering the proposed amendment, Perry has failed to state a claim against Brown and Burke for violations of his constitutional rights.

**D.  Qualified Immunity**

The Bristol County Defendants also contend that they are entitled to dismissal on the basis of qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  Because Perry has not stated a constitutional claim against Hodgson, Vose or Lancaster, there is no need to address the defense of qualified immunity with respect to

those individuals.  For the reasons that follow, the Bristol County Defendants have not

shown that Rose is entitled to qualified immunity at this time.

The determination whether an official is entitled to qualified immunity requires an

assessment as to whether the facts alleged or shown by the plaintiff "make out a violation

of a constitutional right" and, if so, "whether the right at issue was clearly established at

the time of defendant's alleged misconduct."  Id. at 815-16 (quotations and citations

omitted).  "[T]he second, 'clearly established,' step of the qualified immunity analysis

. . . in turn, has two aspects."  Maldonado, 568 F.3d at 269.  As the First Circuit has

described:

> One aspect of the analysis focuses on the clarity of the law at the
> time of the alleged civil rights violation.  To overcome qualified
> immunity, the contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing violates
> that right.  The other aspect focuses more concretely on the facts of
> the particular case and whether a reasonable defendant would have
> understood that his conduct violated the plaintiffs' constitutional
> rights.  Indeed, it is important to emphasize that this inquiry must be
> undertaken in light of the specific context of the case, not as a broad
> general proposition.

Id. (quotations, citations and alterations omitted).  Thus, "the relevant, dispositive inquiry

in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  Id.

(quotations, citations and alterations omitted).

The Bristol County Defendants argue that qualified immunity applies here because

the "Plaintiff's Complaint fails to allege that he was deprived of an actual constitutional

right, clearly established, or any action by any individual defendant that an objectively reasonable official would have believed violated that right." (Bristol County Def. Mem. (Docket No. 34-1) at 13). However, this argument fails vis-à-vis the defendant Rose, against whom Perry has asserted an excessive force claim. In particular, the Bristol County Defendants have not attempted to show why Perry's allegations that Rose attacked him without justification, and while he was wearing full restraints, does not state a claim for excessive force in violation of the Eighth Amendment. (See Compl. ¶¶ 16-17, 24). Nor have they presented any argument as to why it would not have been clear to a reasonable corrections officer that such conduct was unlawful under the alleged circumstances. "Few principles are more sacrosanct in this circuit than the principle that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005) (quoting United States v. Zannino, 895 F.2d 1, 17, (1st Cir. 1990)). Accordingly, the Bristol County Defendants have not shown that Perry's individual capacity claim against Rose should be dismissed on the basis of qualified immunity.

### E.  Official Capacity Claims

By his complaint, Perry is seeking to hold the defendants liable in both their individual and official capacities. (See Compl. ¶¶ 2-11). The defendants argue that the plaintiff's official capacity claims must be dismissed due to his failure to allege the existence of a policy, custom or practice that led to the alleged assault or the alleged

failure to provide proper medical care.  This court agrees that Perry has failed to state an

official capacity claim against any of the Bristol County Defendants or the Norfolk

County Defendants.  Accordingly, those claims will be dismissed.

Suits against government officials acting in their official capacities "represent only

another way of pleading an action against an entity of which an [official] is an agent."

Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)

(quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 98 S.

Ct. 2018, 2085 n.55, 56 L. Ed. 2d 611 (1978)).  Accordingly any claims against Hodgson,

Vose, Lancaster and Rose in their official capacities constitute claims against the Bristol

County Sheriff's Office, and any claims against Bellotti, Perroncello, Brown and Burke

constitute claims against the Norfolk County Sheriff's Department.  As the First Circuit

has explained,

> a governmental entity may not be held liable under 42 U.S.C. § 1983
> for constitutional violations committed by its employees unless the
> plaintiff's injury results from either an officially sanctioned policy or
> from a custom or practice that is "so well-settled and widespread that
> the policymaking officials ... can be said to have either actual or
> constructive knowledge of it yet did nothing to end the practice."

Wood v. Hancock County Sheriff's Dep't, 354 F.3d 57, 64 (1st Cir. 2003) (quoting

Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)).  Here, however, Perry has

not alleged the existence of a custom, policy or practice.  Nor has he alleged any facts

showing that he was deprived of his constitutional rights as a result of a custom, policy or

practice rather than as a result of isolated instances of misconduct. Accordingly, Perry has failed to state a claim against any of the defendants in their official capacities.

## IV. CONCLUSION

For all the reasons described herein, the Norfolk County Defendants' motion to dismiss (Docket No. 16) is ALLOWED and the Bristol County Defendants' motion to dismiss (Docket No. 34) is ALLOWED IN PART and DENIED IN PART. All of Perry's claims against the Norfolk County Defendants and the Bristol County Defendants shall be dismissed except for Perry's claim against Bristol County Defendant Rose in his individual capacity.

      / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge