UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICO PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 10-10769-JGD |
| KEVIN ROSE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

September 6, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Rico Perry ("Perry"), an inmate at the Souza-Baranowski Correctional

Center in Shirley, Massachusetts, has brought this action alleging that he was assaulted

by correctional officers at the Bristol County House of Correction ("BCHC") on June

8-9, 2007, and was subsequently deprived of adequate medical care for the injuries he

sustained as a result of the assault.  In his original pro se complaint filed on April 28,

2010, Perry named as defendants various officials and employees of the BCHC, various

employees of the Norfolk County Jail, and five unnamed guards and two unnamed nurses

at the BCHC.  By his complaint, Perry asserted claims against the defendants pursuant to

42 U.S.C. § 1983, alleging violations of his rights under the Eighth and Fourteenth

Amendments to the United States Constitution.  In response to motions to dismiss filed by

the named defendants, this court, on March 25, 2011, dismissed all claims against the named defendants, except for the claim against Lieutenant Kevin Rose ("Rose") of the BCHC in his individual capacity.

Counsel was subsequently appointed to represent Perry and the parties engaged in discovery. Based on that discovery, Perry, through counsel, has filed a Motion for Leave to Amend Complaint (Docket No. 70). By this motion, Perry is seeking to substitute Lieutenant Robert Shubert ("Shubert"), Officer Steven Assad ("Assad"), and Officer Jeffrey Pipes ("Pipes") (collectively, the "Bristol County Officers") for the unknown correctional officers who either allegedly participated directly in the assault or failed to intervene, and Susie Roy and Claire Rocha for the previously unidentified nurses who allegedly failed to provide him with adequate medical treatment. He is also seeking to add five "John Doe" guards of the BCHC who were allegedly members of the SRT Response Team at the time of the alleged incident. Finally, Perry is seeking to add common law assault and battery claims against the defendants who allegedly participated directly in the assault.

The Bristol County Officers oppose the proposed amendment alleging undue delay, undue prejudice and futility both because the claims are allegedly time barred and because the SRT Response Team was not involved in any incident. After careful consideration of the oral and written arguments and review of the file, the Motion to Amend (Docket No. 70) is ALLOWED. The plaintiff shall notify the court when service is complete so that a new discovery schedule can be established.

## II.  STATEMENT OF FACTS

Where, as here, a motion to amend is opposed on the grounds including futility, the "proposed amendment 'is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'"  Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass 2005) (quoting Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).  "In such circumstances, 'amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory.'"  Id. (quoting Hatch, 274 F.3d at 19).  The court must accept as true all well-pleaded facts set forth in the proposed amended complaint, and give the plaintiff the benefit of all reasonable inferences.  See id. at 294; Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Nevertheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotations and punctuation omitted).  Applying this standard to the instant case, the relevant facts are as follows.

### The Alleged Assault

Plaintiff alleges that the assault giving rise to this case took place on June 8-9, 2007.  (Proposed Am. Compl. (Docket No. 70-1) ¶ 16).  On June 8, 2007, Perry was transferred from the Norfolk County Correctional Center to the BCHC located in North

Dartmouth, Massachusetts.  (Id. ¶ 14).  He claims that at the beginning of the 11:00 p.m. to 7:00 a.m. shift on June 8-9, 2007, he was in a holding cell in the booking area of the BCHC when he called for help after another inmate fainted.  (Id. ¶¶ 16-17).  Proposed defendant Shubert allegedly came to the holding cell and told Perry to mind his own business and, sarcastically, that Perry would have a "nice stay" at the BCHC.  (Id. ¶ 18).

Subsequently, Shubert brought Perry down to a booking room, where defendant Rose was seated.  (Id. ¶ 19).  Perry contends that Shubert grabbed his wrist and hand roughly in order to take fingerprints.  (Id. ¶ 20).  Perry further claims that he pulled his hand away and stated that he would prefer Rose to conduct the booking.  (Id.).  Following this exchange, Shubert and Rose allegedly refused to complete the booking process and began to drag Perry back towards the holding cell while putting "serious pressure" on his arm.  (Id. ¶ 21).  This allegedly prompted Perry to pull his arm away and protest that they were hurting his arm.  (Id.).

Perry contends that Shubert and Rose reacted to his comment by throwing him to the ground and punching and kicking him while repeatedly demanding Perry's apology. (Id.).  Allegedly, proposed defendants Assad and Pipes then arrived at the scene.  (Id. ¶ 22).  According to Perry, Assad joined the assault by punching and kicking him, and Pipes retrieved leg irons for the others to use in further restraining him.  (Id.).  Allegedly, Shubert, Rose, Assad and Pipes finally backed away from Perry upon the arrival of five other John Doe guards, whose names are currently unknown to Perry.  (Id. ¶¶ 23-24). Perry claims that the five John Doe guards, allegedly members of the SRT Response

-4-

Team, handcuffed Perry's hands behind his back and placed iron shackles on his legs while continuing to punch and kick him. (Id.). The five John Doe guards allegedly stopped their assault of Perry after seeing blood in Perry's mouth. (Id. ¶ 26). Perry claims that he suffered a broken jaw, injuries to his head and mouth, bruises all over his body, and a missing tooth as a result of the assault. (Id. ¶ 27).

Immediately after the conclusion of the assault, Perry was taken to the special management unit at the BCHC where proposed defendants Roy and Rocha were nurses on duty. (Id. ¶¶ 28-29). Perry claims that these defendants denied his request to be transferred to the BCHC infirmary or to an outside hospital. (Id. ¶ 29). Allegedly, Perry was not transferred to the infirmary until approximately seventeen hours after the alleged assault. (Id. ¶ 30). Perry was subsequently transferred to St. Luke's Hospital and, later, to Massachusetts General Hospital on an emergency basis, where he underwent surgery on his jaw. (Id.). Perry claims that he continues to suffer physical, mental and emotional distress as a result of the assault. (Id. ¶ 31).

Perry contends that he repeatedly informed the correctional officers at the BCHC in the hours after the alleged assault that he intended to file a grievance for the assault. (Id. ¶ 32). Both Perry and Perry's former counsel requested grievance forms for that purpose. (Id.). Allegedly, these requests for a grievance form were denied. (Id.). Perry further contends that he sent a handwritten grievance to Thomas Hodgson, Sheriff of the BCHC, on June 17, 2007 via the U.S. Postal Service and maintained another hand-written copy in his personal files. (Id. ¶ 33).

By letters dated February 24, 2010 and April 2, 2010, then-counsel representing Perry requested all reports and other information related to the incident which would have enabled Perry to identify all those allegedly involved in the incident.  (Pl. Reply Mem. (Docket No. 74) at Exs. A & B).  By letters dated April 5, 2010, the Bristol County Sheriff's Office declined the requests stating that "the requested information cannot be disclosed at the present time."  (Id. at Exs. C & D).

Additional factual details are described below to the extent they are relevant to this court's analysis.

## **Procedural History**

On April 28, 2010, Perry filed a pro se complaint against the original defendants, including defendant Rose and several other John and Jane Doe defendants, in the United States District Court, District of Massachusetts, for violations of Perry's rights under the Eighth and Fourteenth Amendments to the Constitution arising from the alleged assault. On March 25, 2011, this court granted the defendants' Motions to Dismiss with respect to the plaintiff's claims against them, except for plaintiff's excessive force claim against defendant Rose in his individual capacity.  (Docket No. 54).  A stay of discovery was then entered to allow time for counsel to be appointed.  (Docket Entry dated 06/30/2011). By order dated October 24, 2011, this Court appointed Counsel James D. Smeallie to represent Perry under the United States District Court Plan for the Appointment of Counsel for Indigent Parties in Certain Civil Cases. (Docket No. 61).  On December 2, 2011, this court ordered discovery to be completed by July 31, 2012, and established

January 31, 2012 as the deadline for any amended pleadings.  (Docket No. 68).  This latter deadline was subsequently extended to February 15, 2012.  (Docket Entry dated 01/27/2012).

On January 25, 2012, defendants Rose and the BCHC produced documents responsive to a document request and subpoena.  (Mot. (Docket No. 70) at ¶ 4).  On February 6, 2012, defendant Rose responded to Perry's First Set of Interrogatories.  (Id.) On February 15, 2012, in accordance with the scheduling order as extended, Perry filed his Motion to Amend Complaint on the basis of information disclosed in discovery responses.  (Docket No. 70).  On March 19, 2012, defendant Rose and the proposed Bristol County Officer defendants filed their Opposition to Plaintiff's Motion for Leave to Amend.  (Docket No. 72).  Perry filed a Reply Memorandum on April 5, 2012 (Docket No. 74), and a hearing was held on April 10, 2012.

## III.  ANALYSIS

By his motion for leave to amend, Perry is seeking to substitute specific named defendants for both John and Jane Doe defendants in the original complaint.  The motion is unopposed with respect to the two Jane Doe defendants — the BCHC nurses Roy and Rocha.  Therefore, the motion shall be allowed as to those parties.  With respect to the proposed claims against the BCHC guards Shubert, Assad, Pipes, and five additional John Doe SRT Response Team members, the motion, although opposed, will be allowed for the reasons detailed below.

### A.    Motion to Amend Standard of Review

The decision whether to grant a motion for leave to amend falls within the trial court's discretion.  Sheehan v. City of Gloucester, 321 F.3d 21, 26 (1st Cir. 2003).  "Leave to amend under Rule 15 is freely given when justice so requires absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive."  Transwitch Corp, 377 F. Supp. 2d at 290 (quotations and citation omitted).  This court finds the proposed defendants' claims of undue delay, undue prejudice and futility unpersuasive.

## 1.   **Undue Delay**

"While courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party . . . it is clear that 'undue delay' can be a basis for denial[.]"  Hayes v. N.E. Millwork Distribs., Inc., 602 F.2d 15, 19 (1st Cir. 1979) (citations omitted).  However, in the instant case, the identity of the newly named defendants was not known until they were identified in reports which were not produced, despite earlier requests, until the deadline to amend pleadings had nearly expired.  Prior to bringing suit, Perry, through counsel, had sent letters to the BCHC on February 24, 2010 and April 2, 2010 requesting documents relating to the incident, but the requests were denied.  Subsequent delays in discovery were due to the pendency of the motions to dismiss and a court ordered stay to enable counsel to be appointed.  Although the information was in the possession of the BCHC, it was not produced until January 25, 2012.  The proposed amendment on February 15, 2012, within the schedule set by the court, was timely.

###### 2.   Undue Prejudice

Under Fed. R. Civ. P. Rule 15(a), this court may deny an amendment on the grounds of undue prejudice to defendants.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S. Ct. 795, 802, 28 L. Ed. 2d 77 (1971); Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983); see generally 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1487 (1990).  Defendants assert that they will be unduly prejudiced by allowance of the amendment.  This court disagrees.

The defendants contend that they will be prejudiced because the alleged incident occurred more than five years ago and they had no notice of it, and because the plaintiff has added new causes of action.  However, both the new causes of action, which include the state court claims of assault and battery and the claim that certain defendants failed to stop the assault, and the pending claims, all arise out of a common nucleus of facts. Regardless of the legal theories proffered, the events of June 8-9, 2007 and Perry's subsequent medical treatment, or lack thereof, will have to be explored.  Since no trial date has been set, the parties will have ample opportunity to engage in discovery.  There is no undue prejudice.  See Picker Int'l, Inc. v. Leavitt, 128 F.R.D. 3, 7-9 (D. Mass. 1989) (no undue prejudice where, inter alia, new claims are closely related to pending claims).

The fact that the incident occurred more than five years ago does not compel a finding of undue prejudice.  The proposed defendants allegedly were the parties involved in the alleged assault and are employees of the BCHC, which has been aware of the

plaintiff's claims since well before suit was even filed.  The only reason that the plaintiff

did not know of their identities earlier (and within the statute of limitations period) was

because the BCHC refused to disclose the information as stated in the BCHC's letters of

April 5, 2010.  Under such circumstances, the new defendants are deemed to have at least

constructive notice of the litigation.  See Byrd v. Abate, 964 F. Supp. 140, 145-47

(S.D.N.Y. 1997) (corrections officer substituted for "John Doe" defendant had construc-

tive notice of suit where he was represented by the same attorney as other defendants);

Archibald v. City of Hartford, 274 F.R.D. 371, 379-80 (D. Conn. 2011) (same); Daily v.

Monte, 26 F. Supp. 2d 984, 988 (E.D. Mich. 1998) (newly added prison officials and

guards had constructive notice of inmate's action where they were named in incident

reports).

For all these reasons, the defendants will not be unduly prejudiced if the motion to

amend is allowed.

### 3.   Futility

The defendants' principal argument is that the amendment would be futile because

the claims are barred by the statute of limitations and because the SRT Response Team

was not involved in the plaintiff's booking.  Futility constitutes an adequate basis to deny

a proposed amendment.  Demars v. Gen. Dynamics Corp., 779 F.2d 95, 99 (1st Cir.

1985).  In the instant case, however, the claims relate back to the date of the original

complaint and, therefore, are not time barred.  In addition, the plaintiff has alleged

sufficient facts to state a claim against the SRT Response Team.

a.        **Relation Back**

"Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint." Pessotti v. Eagle Mfg. Co., 946 F.2d 974, 975 (1st Cir. 1991).  Pursuant to Fed. R. Civ. P. 15(c)(1)(A), "[a]n amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action."  Massachusetts law is "more liberal than the federal law with respect to the principle of relation back" and permits new parties to be added to an ongoing case even after the expiration of the limitations period.  Conneely v. Butterworth Jetting Sys., Inc., 219 F.R.D. 25, 26-27 (D. Mass. 2003); Wadsworth v. Boston Gas Co., 352 Mass. 86, 89-90, 223 N.E.2d 807, 810-11 (1967).

The Amended Complaint purports to add state law claims to which the state statute of limitations applies.  In addition, it purports to add § 1983 claims to which the state statute of limitations also applies.  See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (since "Section 1983 does not contain a built-in statute of limitations," federal courts in this Circuit "borrow" the three year statute of limitations for personal injury actions found in Mass. Gen. Laws ch. 260, § 2A).  Under such circumstances, the Massachusetts relation back standard should apply.[1]  See Velez v. Alvarado, 145 F. Supp. 2d 146, 157-59 (D.P.R. 2001) (where Puerto Rico state statute of limitations applies to

---

[1]  It does not appear that the First Circuit has directly decided whether the state or federal relation-back rules apply to § 1983 claims.

§ 1983 action, state relation-back rules apply and permit addition of new parties who

could not be added under federal rules); <u>Sigros v. Walt Disney World Co.</u>, 190 F. Supp.

2d 165, 168 (D. Mass. 2002) (where Massachusetts statute of limitations applies to

plaintiff's federal ADA claims, "the liberal Massachusetts relation-back rule applies to

plaintiff's ADA claims").  Mass. R. Civ. P. 15(c) provides that "[w]henever the claim or

defense asserted in amended pleading arose out of the conduct, transaction, or occurrence

set forth or attempted to be set forth in the original pleading, the amendment (*including*

*an amendment changing a party*) relates back to the original pleading."  Mass. R. Civ. P.

15(c) (emphasis added).  Since there is no question that the proposed amended complaint

in this case relates to the same incident as the original complaint, it relates back under

Massachusetts law and is timely.  <u>See</u> <u>One Beacon Ins. Co. v. Electrolux</u>, 223 F.R.D. 21,

25 (D. Mass. 2004) (applying Massachusetts law, relation back appropriate where claims

arose out of the original occurrence, proposed defendants would not be prejudiced and

any delay was excused).

  If Fed. R. Civ. P. 15(c)(1)(C) were deemed to apply to the § 1983 claim, the

analysis would be more complicated but, nevertheless, under the unique facts of this case,

the results would be the same.  Rule 15(c)(1)(C) has three essential requirements:

> First, the claim asserted against the newly-designated defendant must
> satisfy the terms of Rule 15(c)(1)(B), which provides that the claim
> must arise out of the conduct, transaction, or occurrence set out – or
> attempted to be set out – in the original pleading.  Second, within the
> period provided by [Fed. R. Civ. P.] 4(m) for serving the summons
> and complaint, the party to be brought in by amendment must have
> received such notice of the action that it will not be prejudiced in

> defending on the merits.  Third, it must appear that within the same
> time frame the newly-designated defendant either knew or should
> have known that the action would have been brought against it, but
> for a mistake concerning the proper party's identity.

Morel v. DaimlerChrysler AG, 565 F.3d 20, 26 (1st Cir. 2009) (internal quotation marks and citations omitted).

As established earlier, plaintiff's amendment satisfies the first element because the claims asserted against the proposed defendants arise out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading.  See id.  With respect to the second element, the proposed defendants had at least constructive knowledge of the lawsuit because, among other reasons, they allegedly committed the assault and share counsel with the original defendants.  See Cholopy v. City of Providence, 228 F.R.D. 412, 416-17 (D.R.I. 2005), and cases cited ("Plaintiff need not show actual notice for purposes of Rule 15(c), as the Rule may be satisfied by a showing of constructive notice" such as "if the original complaint alleges that the new defendant committed the alleged acts and is an official of one of the original defendants" or if the new defendant "retains the same attorney as an original defendant and that attorney should have known that the new defendant would be added to the existing lawsuit" or "if the original and newly named defendants share an identity of interests" because they "are so closely related in business or other activities and their interests are sufficiently aligned that it is fair to presume that the new defendant learned of the institution of the action from the original defendants.") (internal citations and quotations omitted).

The third element is not as clear cut.  In <u>Cholopy</u>, the court cited a number of cases which have held that "amendments naming 'John Doe' defendants whose identity is unknown at the time of filing do not relate back under Rule 15(c)(3)" because not knowing the identity of a defendant is not the equivalent of a mistake in naming a specific defendant.  <u>Cholopy</u>, 228 F.R.D. at 417-18, and cases cited.  There is, however, law to the contrary.  <u>See</u> <u>Velez</u>, 145 F. Supp. 2d at 156 (officers who allegedly participated in inmate's beating "reasonably should have known that but for a mistake in identity, they would have been named in the original complaint").  This issue does not need to be resolved in the instant case.  Here, the plaintiff made an express attempt to learn the identity of those involved in the incident within the limitations period, but was denied the information by the BCHC.  Under such circumstances, the amendment should be allowed.  Otherwise, it "would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended."  <u>Byrd</u>, 964 F. Supp. at 146.

For all these reasons, the claims raised in the amended complaint are timely, and the amendment is not futile.

### b.    <u>SRT Response Team</u>

Finally, defendants argue that all claims based upon the alleged involvement of the SRT Response Team are futile because there is no evidence that any such team had any involvement with Perry on the night of the alleged incident.  As detailed above, futility of a proposed amendment "is gauged by reference to the liberal criteria of Federal Rule of

Civil Procedure 12(b)(6)."  Hatch, 274 F.3d at 19.  In such circumstances, "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory."  Id.  In the proposed amended complaint, plaintiff alleges that the SRT Response Team handcuffed Perry's hands and placed iron shackles on his legs while assaulting him.  Regardless of whether there is evidence to support this claim at the summary judgment stage, plaintiff has alleged sufficient facts to allow him to proceed with this claim.

## IV.  CONCLUSION

For the reasons described above, the "Motion of Plaintiff for Leave to Amend Complaint" (Docket No. 70) is ALLOWED.

                                          / s / Judith Gail Dein                
                                         Judith Gail Dein
                                         U.S. Magistrate Judge