UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
**RICO PERRY,**                                     )
                                                    )
                    **Plaintiff,**                  )
                                                    )          **Civil Action No.**
         **v.**                                     )          **10-10769-FDS**
                                                    )
**SUSIE ROY and CLAIRE ROCHA,**                     )
                                                    )
                    **Defendants.**                 )
_____)


## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, OR REMITTITUR, AND PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

**SAYLOR, J.**

In June 2007, plaintiff Rico Perry suffered a broken jaw in an altercation with

correctional officers while in custody at the Bristol County House of Correction.  Defendants

Susie Roy and Claire Rocha were staff nurses at the facility and evaluated Perry after the

incident.  Perry brought suit against the nurses pursuant to 42 U.S.C. § 1983, alleging that they

exhibited deliberate indifference to his serious medical needs in violation of the Eighth and

Fourteenth Amendments of the United States Constitution.[1]  The case was tried to a jury in

September 2015; the jury found that both Roy and Rocha violated Perry's constitutional rights

and awarded him compensatory damages in the amount of $50,000 and punitive damages in the

amount of $500,000.

Pending before the Court is defendants' motion for judgment as a matter of law, or, in the

---

[1] The amended complaint also alleged claims against eight correctional officers under 42 U.S.C. § 1983 for physical assault and failure to protect against use of excessive force, and under Massachusetts law for assault and battery; the claims against those officers settled before trial.

alternative, a new trial or remittitur.  Plaintiff has also moved for attorneys' fees.  For the reasons

set forth below, defendants' motion will be granted in part and denied in part, and plaintiff's

motion for attorneys' fees and costs will be granted, with minor modifications.

## I.   Defendants' Motion for Judgment as a Matter of Law, New Trial, or Remittitur

Judgment as a matter of law may be granted when the evidence, considered in the light

most hospitable to the verdict, "is so one-sided that [the moving party] is plainly entitled to

judgment, for reasonable minds could not differ as to the outcome."  *Colasanto v. Life Ins. Co. of

N. Am.*, 100 F.3d 203, 208 (1st Cir. 1996) (citation omitted); *Zimmerman v. Direct Fed. Credit

Union*, 262 F.3d 70, 75 (1st Cir. 2001) ("[T]he jury's verdict must stand unless the evidence,

taken in the light most favorable to the prevailing party, points unerringly to an opposite

conclusion.").

A court must grant a new trial when jury instructions contain a prejudicial error.  *Sullivan

v. National Football League*, 34 F.3d 1091, 1107 (1st Cir. 1994).  A jury instruction is erroneous

if it does not adequately explain the law, or it confuses or misleads the jury as to a material issue

in the case.  *See id.* at 1107-08.

As an alternative to ordering a new trial, a court may order a remittitur of damages in

certain circumstances.  The First Circuit has held that a district court is "obligated . . . to grant a

remittitur or a new trial on damages only when the award 'exceeds any rational appraisal or

estimate of the damages that could be based upon the evidence before it.'"  *Eastern Mountain

Platform Tennis, Inc. v. Sherwin-Williams Company, Inc.*, 40 F.3d 492, 502 (1st Cir. 1994)

(quoting *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 36 (1st Cir. 1988)).  Courts have

interpreted this standard to mean that a damages award must stand unless it is "grossly excessive,

inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice

2

to permit it to stand." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1197 (1st Cir. 1995). The Court need not, however, give the plaintiff the option of a new trial if it grants remittitur only as to punitive damages. *See Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 27 (1st Cir. 2006).

### A.   Motion for Judgment as a Matter of Law

The Court essentially instructed the jury that Perry had to prove two separate elements to be granted judgment on his claim:  (1) that he had one or more serious medical needs and (2) that the defendants were deliberately indifferent to his serious medical needs.  (Tr. Day 4 at 66:4). In the present motion, defendants challenge the jury's verdict as to both elements.

### 1.   Serious Medical Need

With respect to the first element, the jury was instructed that "[a] person has a 'serious medical need' if the person has an injury or condition that poses a substantial risk to his health or safety, or that poses a substantial risk of significant pain and suffering, such that medical care or treatment should be provided in a timely fashion."  (Tr. Day 4 at 66:12).  The Court further instructed the jury that the standard for determining a serious medical need "is objective— whether a reasonable physician or other trained medical professional (or, if sufficiently obvious, a lay person) would conclude, under the circumstances, that the prisoner had a serious medical need."  (Tr. Day 4 at 66:18).

There was more than sufficient evidence to support the jury's conclusion that Perry had a serious medical need at the time of his evaluations by Nurses Roy and Rocha.  Perry testified that at the time of his first examination by Nurse Roy, he had "blood inside [his] mouth," "lumps on [his] face," and that his jaw was "clinched" and "not moving." (Tr. Day 2 at 36-38).  Nurse Roy herself testified that Perry had bleeding inside the mouth and a cracked lower-left molar.  (Tr.

3

Day 3 at 76-77).  Perry further testified that at the time of Nurse Rocha's examination, he had

cuts in his mouth, one missing and one "bent" tooth, and "knots on [his] head."  (Tr. Day 2 at

42).  Dr. David Fuerman, who treated Perry at St. Luke's Hospital, testified that Perry's jaw was

fractured in two places.  (Tr. Day 2 at 129:13).  Finally, the jury could have reasonably

concluded that Perry's jaw was broken during the altercation, before he was seen by either nurse,

and constituted a serious medical need.

### 2.     <u>Deliberate Indifference</u>

As to the second element, the Court instructed the jury that "[t]here are two different

ways in which the plaintiff may prove that a defendant was 'deliberately indifferent':  First, the

plaintiff may prove that a defendant actually knew that he had one or more serious medical needs

and disregarded those needs. . . . Second, the plaintiff may prove that a defendant was 'willfully

blind' to his serious medical needs."  (Tr. Day 4 at 67:15).

The evidence was not so one-sided that either defendant was "plainly entitled to

judgment."  *See Colasanto*, 100 F.3d at 208.  With respect to Nurse Roy, the evidence indicated

that despite Perry's condition, she spent no more than two minutes examining Perry during her

first evaluation.  (Tr. Day 2 at 39:25).  The jury was also entitled to credit Perry's testimony that

Nurse Roy saw him a second time, for one minute only, and that during that second visit, Nurse

Roy responded to an unidentified correctional officer's concern that Perry might need to go to

the hospital by saying, "No, he's all right, he's fine, trust me."  (*Id.* at 41-42).

With respect to Nurse Rocha, the evidence established that she did not examine Perry's

jaw despite his belief that it was broken and that it felt "off-set."  (*Id.* at 43, 45).  Furthermore, it

was not disputed that Rocha "examined" Perry through the window of the door to his cell, and

did not enter the cell for a more thorough evaluation.  (Tr. Day 3 at 119:18).

4

Thus, the jury could have concluded that despite the fact that Perry had been in an altercation, and despite his injuries described above, neither defendant performed anything more than a cursory examination.  As a result, the jury could have concluded that defendants either had actual knowledge of Perry's injuries but did nothing, or that they willfully made themselves blind to his injuries.

### B.   Motion for New Trial

Defendants contend that they are entitled to a new trial because the Court's instruction to the jury on willful blindness was erroneous.  The Court instructed the jury as follows:

> [T]he plaintiff may prove that a defendant was "willfully blind" to his serious medical needs.  In order to prove that a defendant was willfully blind, the plaintiff must prove two things:  (1) that the defendant was aware of a high probability of the existence of one or more serious medical needs, and (2) that the defendant consciously and deliberately avoided learning of those serious medical needs. However, mere negligence, mistake, or carelessness is not enough.  There must be a deliberate effort to remain ignorant of the plaintiff's serious medical needs.

(Tr. Day 4 at 67:15).

The willful blindness instruction was thoroughly briefed and discussed at the charge conference prior to trial.  (*See* Tr. Day 4 at 5-15).  The Court carefully considered the issue at the time, and has carefully reconsidered it in response to defendants' motion for a new trial.  It sees no reason to reverse its conclusion that a willful blindness instruction was appropriate for the reasons stated at the charge conference and given the evidence presented in the case. Defendants' motion for a new trial based on that instruction will therefore be denied.

### C.   Motion for Remittitur

Defendants also seek an order of remittitur of the punitive damages awarded by the jury. Defendants contend that the award of punitive damages was not supported by the evidence at trial, and, in the alternative, that the amount of damages awarded was excessive.

1.      **The Award of Punitive Damages was Proper**

Punitive damages may be awarded in a § 1983 action only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "[T]his threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." *Id.*

Here, the federally-protected right at issue was a prisoner's Eighth Amendment right to receive treatment for serious medical needs. *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988) (listing cases). It is well-established that a defendant violates that right when he is deliberately indifferent to a prisoner's serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The Supreme Court has equated "deliberate indifference" with "subjective recklessness," which "permits a finding of recklessness only when a person disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 836-840 (1994). Thus, a mental state akin to criminal recklessness in a defendant is inherent in a finding that the defendant is liable under a theory of deliberate indifference. Accordingly, it would appear that, at least for § 1983 claims tried on a theory deliberate indifference, a finding of liability would be sufficient to meet the *Smith* standard for obtaining punitive damages. Other language in *Smith* supports that conclusion:

> There has never been any general common-law rule that the threshold for punitive damages must always be higher than that for compensatory liability. On the contrary, both the First and Second Restatements of Torts have pointed out that "in torts like malicious prosecution that require a particular antisocial state of mind, the improper motive of the tortfeasor is both a necessary element in the cause of action and a reason for awarding punitive damages." Accordingly, in situations where the standard for compensatory liability is as high as or higher than the usual threshold for punitive damages, most courts will permit awards of punitive damages without requiring any extra showing. Several courts have so held expressly.

*Smith*, 461 U.S. at 53.

The First Circuit has held that the standard "requires proof that the defendant acted 'in the face of a perceived risk that doing so would violate [the plaintiff's] federally assured rights.'" *Iacobucci v. Boulter*, 193 F.3d 14, 26 (1st Cir. 1999) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535-36 (1999)).  The court further explained:

> The state of mind required to make out a cognizable section 1983 claim (at least one grounded in false arrest) differs importantly from that required to justify punitive damages. The former requirement relates only to the conduct, not to the consequence; that is, it entails an intent to do the act, not to effect a civil rights violation.

*Iacobucci*, 193 F.3d at 26.

Defendants argue that punitive damages are inappropriate in this case because there was no evidence presented that either Nurse Roy or Nurse Rocha acted with the knowledge or intent that their conduct would violate the federally protected rights of Perry.

As nurses employed in a prison facility, both Roy and Rocha were surely aware that prisoners had a right to receive treatment for their serious medical needs.  *Cf. Powell v. Alexander*, 391 F.3d 1, 20 (1st Cir. 2004) (defendant city solicitor "surely understood" that retaliation against former employee for filing a lawsuit risked violating employee's First Amendment right to petition government for redress).  The jury found based on the evidence presented that the two nurses were deliberately indifferent to Perry's serious medical needs. That finding is sufficiently equivalent, in this context, to a finding that they were recklessly or callously indifferent to his federally-protected Eighth Amendment right to receive medical treatment.  Accordingly, it was within the jury's power to award punitive damages against the defendants.

7

### 2.      The Amount of Punitive Damages Awarded was Excessive

Punitive damages awards that are grossly excessive violate the Due Process Clause of the

Fifth Amendment.  *Bisbal-Ramos*, 467 F.3d at 27 (citing *State Farm Mut. Auto. Ins. Co. v.*

*Campbell*, 538 U.S. 408, 418 (2003)).   In reviewing the constitutionality of a jury's award of

punitive damages, courts are required to consider three "guideposts":  (1) the degree of

reprehensibility, (2) the disparity between the harm suffered by the plaintiff and the punitive

damages award, and (3) the difference between the award and possible civil penalties in

comparative cases.  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

#### a.      Degree of Reprehensibility

"[T]he degree of reprehensibility is the most important guidepost in the *BMW* test."

*Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 53 (1st Cir. 2009); *State Farm*, 538

U.S. at 419.  Measuring the degree of reprehensibility requires consideration of several sub-

factors, including:

> [whether] the harm caused was physical as opposed to economic; the tortious
> conduct evinced an indifference to or a reckless disregard of the health or safety
> of others; the target of the conduct had financial vulnerability; the conduct
> involved repeated actions or was an isolated incident; and the harm was the result
> of intentional malice, trickery, or deceit, or mere accident.

*Id.* (citing *BMW*, 517 U.S. at 576-77).

Here, those factors weigh both for and against a finding of reprehensibility.  In the

defendants' favor, although the harm suffered by Perry was physical, as opposed to economic,

the conduct of the nurses themselves was not violent.  *Cf. BMW*, 517 U.S. at 575-76 ("violence

or the threat of violence" considered more reprehensible).  The case also did not involve repeated

conduct, and there was no evidence that the actions of the nurses arose out of intentional malice,

trickery, or deceit.  However, by the very nature of the claim, the defendants did "evince[ ] an

indifference" to Perry's health.  Furthermore, Perry's status as an inmate rendered him especially

vulnerable.  "An inmate must rely on prison authorities to treat his medical needs; if the

authorities fail to do so, those needs will not be met. . . . denial of medical care may result in pain

and suffering which no one suggests would serve any penological purpose."  *Estelle*, 429 U.S. at

103.

Accordingly, and taken as a whole, the facts of this case establish that each defendant's

conduct falls more towards the "less-reprehensible" end of the spectrum.

### b.        Disparity Between Compensatory and Punitive Damages

Evaluating the ratio between a jury's award of compensatory and punitive damages

cannot be done on a categorical basis.  *BMW*, 517 U.S. at 582.  A higher ratio may be acceptable

when a case involves a "particularly egregious act [that] has resulted in only a small amount of

economic damages."  *Id.*  Conversely, a lower ratio is appropriate when compensatory damages

are "substantial," and the defendant's conduct is less reprehensible.  *See State Farm*, 538 U.S. at

425.  Finally, "few awards exceeding a single-digit ratio between punitive and compensatory

damages, to a significant degree, will satisfy due process."  *Id.*

Here, the jury award Perry total punitive damages of $500,000 ($250,000 against each

defendant) and compensatory damages of $50,000, a 10:1 ratio.  Although that does not exceed

single-digits by a "significant degree," it does appear to be excessively high given the substantial

compensatory award and the relative reprehensibility of the defendants.

### c.        Possible Civil Penalties

The final *BMW* factor requires the Court to compare the amount of punitive damages

awarded with the civil or criminal penalties that could be imposed for comparable misconduct.

This factor "directs a reviewing court to assess the punitive damage award in light of the

complex of statutory schemes developed to respond to the same sort of underlying conduct."

*Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 82 (1st Cir. 2001).  In § 1983 cases, courts

must consider whether awards approved in other cases gave the defendants "fair notice" as to

their potential liability.  *Davis v. Rennie*, 264 F.3d 86, 118 (1st Cir. 2001).

      Defendants ask the Court to take a narrow view of what constitutes comparable cases,

and infer from the relative dearth of punitive damages awards for claims of deliberate

indifference to serious medical needs that they could not have had fair notice that they would be

subject to punitive damages in this case.  However, it is well-established that punitive damages

may be awarded for conduct by a state actor involving "reckless or callous indifference to the

federally-protected rights of others."  *Smith*, 461 U.S. at 56.  And although each case is different,

it cannot be said that defendants were not on "fair notice" as to the possibility of punitive

damages for committing a civil rights violation, at least insofar as the amount is consistent with

the first two *BMW* factors discussed above.

### d.    <u>Conclusion</u>

      In determining whether to remit an award of punitive damages, it is not the role of the

Court to substitute its own judgment as to the "correct" award for that of the jury.  Instead, a

Court's review is limited to determining whether the jury's award comported with the Fifth

Amendment.  If it did not, the Court's duty is to remit that portion of the award that is in excess

of what due process allows.  Thus, the Court's job is to determine the highest amount the jury

*could have* awarded under the Due Process Clause, not the amount the Court itself would have

awarded in the jury's place.

      After consideration of the *BMW* factors, and the evidence as a whole, the Court concludes

that due process allows for punitive damages of no more than $75,000 per defendant, or

$150,000 total—that is, a 3:1 ratio of punitive damages to actual damages.  That amount takes into account the relative reprehensibility of defendants' conduct, plaintiff's vulnerability and reliance on defendants to receive humane treatment, and the significant compensatory damages awarded.

**II.**      **Plaintiff's Motion for Attorneys' Fees and Costs**

Perry has also moved for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  He requests attorneys' fees in the amount of $107,035.00 and costs in the amount of $3,716.89.

**A.**      **Attorneys' Fees**

A district court has "broad" discretion to determine what reasonable fees and costs should be awarded to the prevailing plaintiff.  *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir. 1988).  "Although this fee-shifting provision is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory."  *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 293 (1st Cir. 2001).  There is no dispute that Perry is the prevailing party; accordingly, the sole issue is what amount of attorneys' fees and costs is reasonable under the circumstances.  The prevailing party has the burden of substantiating the requested fees and costs with detailed billing records and hourly rates.  *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011).

**1.**      **Lodestar Calculation**

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees.  *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *Spooner*, 644 F.3d at 67-69.  This method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v.*

11

*O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Perry was represented throughout the litigation by two attorneys, Benjamin McGovern and Amanda Orcutt. Attorney McGovern recorded 269.7 hours to Perry's case. Attorney Orcutt recorded 314.9 hours, for a total of 584.6 attorney hours. Perry's litigation team also included two paralegals, Corey Beauvais and Brianne Steele. Beauvais recorded 33.3 hours; Steele recorded 16.0.

Defendants contend that some of the records include (1) block billing entries, (2) attorney billing for tasks that should have been performed by paralegals, and (3) instances of unreasonable and unnecessary billing. Although defendants requested that those hours be eliminated, defendants have identified only three specific examples. While there are instances of block billing, the records are detailed and largely reasonable. Under the circumstances, the Court will apply an across-the-board discount of 5% to the attorney hours requested and will leave paralegal hours unchanged. Thus, plaintiff may recover fees for a total of 555.4 attorney hours and 49.3 paralegal hours.

After determining the number of hours reasonably expended, the second step in calculating the lodestar requires a determination of a reasonable hourly rate. *See Gay Officers Action League*, 247 F.3d at 295. However, under the Prison Litigation Reform Act, "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under [the Criminal Justice Act] for payment of court-appointed counsel." 42

U.S.C.A. § 1997e(d)(3).  After performing the necessary calculations based on the CJA rates in effect for the years 2013, 2014, and 2015, plaintiff seeks recovery at an average discounted rate of $175 per attorney-hour and $100 per paralegal-hour.  Defendants do not oppose those rates and the Court finds them reasonable under the circumstances.

Thus, the lodestar calculation results in fees for attorneys of $97,195 (555.4 hours x $175 per hour), and fees for paralegals of $4,930 (49.3 hours x $100 per hour), for a combined total of $102,125.

### 2.   Adjustments

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors.  *Spooner*, 644 F.3d at 68.  At a minimum, the court should consider the lodestar in light of "the amount of damages awarded as compared to the amount sought."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  Here, plaintiff seeks roughly $100,000 in fees following a total final award of compensatory and punitive damages of $200,000.  The defendants have not asked the Court to further adjust plaintiffs' fees, and the Court finds that no such adjustment is necessary under the circumstances.

### 3.   Judgment Off-set

Under the Prison Litigation Reform Act, courts are required to apply a portion of the final judgment, up to 25%, as an off-set of attorneys' fees.  42 U.S.C. § 1997e(d)(2).  The amount of attorneys' fees for which the defendants are responsible will therefore be offset by $50,000.  After subtracting this amount, attorneys' fees of $52,125 will be assessed against defendants.

### B.   Costs

After a review of Perry's costs, and no objection having been raised by defendants, the Court will award costs in the amount of $3,716.89.

**III.**     **Conclusion**

For the foregoing reasons, defendants' motion for judgment as a matter of law, or, in the alternative, for a new trial will be DENIED.  Defendants' motion for remittitur of punitive damages will be GRANTED; judgment shall enter in the amount of $75,000 in punitive damages against each defendant, plus the already determined compensatory damages of $50,000.  The resulting total judgment amount is $200,000, plus attorneys' fees in the amount of $52,125, and costs in the amount of $3,716.89.

**So Ordered.**


                                          /s/  F. Dennis Saylor
                                          F. Dennis Saylor IV
Dated:  May 4, 2016                       United States District Judge